Ken THURSTON, Plaintiff and Appellant,

v.

CACHE COUNTY et al., Defendant and Respondent.

Michael P. NIELSEN, Plaintiff and Appellant,

v.

CACHE COUNTY et al., Defendant and Respondent.

No. 16544.

Supreme Court of Utah.

Feb. 9, 1981.

W. Scott Barrett, Logan, for plaintiff and appellant.

F. L. Gunnell, Logan, for defendant and respondent.

HALL, Justice:

Plaintiffs Ken Thurston and Michael P. Nielsen appeal from the trial court's refusal to grant declaratory relief from the denial, by the County Commission of Cache County, Utah, of plaintiffs' request for certain conditional use permits to build residences in an agricultural area.

Pursuant to Utah law,[1] Cache County adopted a master zoning plan for the unincorporated areas of the county in 1970. The plan reflected solicitude for agricultural lands lying within the county and contained certain measures designed to alleviate the effects of "scattered and premature urbanization." One such measure provided that parcels of land in agricultural zones could not be subdivided into lots measuring less than ten acres. Secondary dwellings were permissible only upon obtaining a conditional use permit.

In 1977, a new policy plan was adopted. Reiterating the desire to limit prime farm lands to low-density rural development, the plan nonetheless recognized the need to provide for the conveyance of smaller parcels to designated family members and employees. To this end, the plan provided that "small building parcels may be split from each parcel held in individual ownership. Clustering of these lots will be required to reduce the needs for roads and to preserve the integrity of the land for agricultural uses."

Cache County's Zoning Ordinance was amended in 1978. Thereunder, secondary dwellings could be built on agriculturally-

---

1. U.C.A., 1953, 17–27–4.

zoned property by landowners actively engaged in agriculture without obtaining conditional use permits. Those not engaged in farming or other agricultural pursuits, who wished to build a residence in an agriculturally-zoned area, were required to obtain a conditional use permit. Pertinent to the obtaining of such permits, the ordinance stated that:

The Planning Commission may approve, modify and approve, or deny the conditional use application. In approving any conditional use, the Planning Commission may find that the proposed use meets the criteria established in the numerical evaluation system which has been developed by the Planning Commission in accordance with the intent of the Cache County comprehensive plan and that the proposed use will not be detrimental to the health, safety, or general welfare of persons residing in the vicinity, or injurious to property in the vicinity.

The "numerical evaluation system" referred to assigns or denies points to the application according to certain criteria. Points are awarded for residential development which lies closer to pre-existing development and has roadway and utility access, and are deducted for intrusions upon prime farm land or other factors which would be of detriment to agriculture. The evaluation system is advisory in nature, and not solely determinative of the disposition of any given application.

Plaintiff Thurston made application for a conditional use permit to erect a residence on a one-acre lot. His request was denied by the County Planning Commission,[2] and the Board of County Commissioners upheld the denial. The trial court found the reasons for denial to be (1) lack of points, (2) objections from adjacent landowners, (3) considerations of health, safety, and general welfare of persons residing in the vicinity, and (4) soil type.

Plaintiff Nielsen made application for a conditional use permit to divide a ten-acre lot into two five-acre parcels for building purposes. The Planning Commission denied his application due to (1) lack of points, (2) access road problems, (3) lack of community services, (4) soil type, and (5) lack of conformity with the basic policy of the master plan. The Board of County Commissioners upheld the decision of the Planning Commission.

Both plaintiffs filed with the district court for declaratory relief pursuant to Utah law.[3] Following a trial to the court sitting without a jury, declaratory relief was denied, and the rulings of the Board of County Commissioners affirmed. Plaintiff Thurston also entered a prayer for a writ of mandamus which would require the defendant to approve the application for a conditional use permit, which the trial court denied.

Plaintiffs first claim that the terms of the Cache County Zoning Ordinance applied in their case denied them equal protection of the law.[4] They base this contention on two aspects of the ordinance.

First, it is plaintiffs' assertion that the ordinance provides insufficient guidelines or standards for the issuance or denial of conditional use permits. Where a municipal zoning authority is thus left completely without legislative limitations to issue or deny permits according to its own desires, applicants are denied equal protection of the law.[5]

■ While it is true that a zoning ordinance must set some ascertainable boundaries on the exercise of discretion by a zoning authority, such boundaries are not re-

---

2. Under the Cache County Zoning Ordinance, application for conditional use permits is made to the County Planning Commission, with right of review in the County Commission itself.

3. U.C.A., 1953, 78–33–2.

4. Fourteenth Amendment, Constitution of the United States.

5. Plaintiffs cite *Osius v. City of St. Clair Shores*, 344 Mich. 693, 75 N.W.2d 25 (1956): "Where a zoning ordinance permits officials to grant or refuse permits without the guidance of any standard, but according to their own ideas, it does not afford equal protection."

quired to be unduly rigid or detailed. A generalized exposition of overall standards or policy goals suffices to direct the inquiry and deliberation of the zoning authority, and to permit appellate review of its decision. Thus, courts have upheld ordinances which permit conditional use permits "where the use will be in keeping with the uses authorized in the district," [6] where the zoning authority was required to consider harmony with the neighborhood and the district,[7] or where the zoning authority was required to consider the suitability of the property, character of the neighborhood, and economic or aesthetic effects of the proposed use.[8]

■ The Cache County Planning Commission is empowered by the County Zoning Ordinance to issue or deny conditional use permits, guided by advisory application of the numerical evaluation system developed by the county, and under the proviso that "[t]he proposed use will not be detrimental to the health, safety, or general welfare of persons residing in the vicinity, or injurious to property in the vicinity." Such statutory standards adequately channel the discretionary activities of the Planning Commission, and do not support a claim of denial of equal protection.

■ Plaintiffs also suggest that the Cache County Ordinance violates their right to equal protection of the law by permitting individuals related to or working for a primary-occupation farmer or dairyman to engage in residential construction in an agriculturally-zoned area without a conditional use permit, while requiring all other individuals to obtain such a permit in order so to build.

As the zoning ordinance in question touches neither upon a suspect classification nor upon a fundamental right or interest, it is sufficient, for equal protection purposes, if the classification adopted by the ordinance is rationally related to a legitimate public goal.[9] The classification made by the Cache County Zoning Ordinance in the instant case sought to (1) preserve to farmers within the area maximum agricultural use of their land, (2) permit conveyance of parcels of land to family members and employees without undue governmental interference, and (3) guard against uncontrolled urban and suburban encroachments upon agricultural lands. The requirements imposed by the ordinance struck a harmonious balance of these three goals. There is hence no violation of equal protection.

Plaintiffs cite authority for the proposition that, in the area of zoning and county planning, equal protection requires that distinctions be based on the use of land itself, and not upon the occupation or vocation of those owning or possessing the land. Without adopting such a proposition as the law of this jurisdiction, we observe that the ordinance distinguishes between landowners which are or are not actively engaged in agriculture as a primary occupation. Agriculture being, by definition, a land-based occupation, it is rationally inconceivable to suggest that the distinction does not bear upon the use made of the land in question.

Plaintiffs next suggest that, even if the Cache County Zoning Ordinance be constitutionally valid, the County Planning Commission and the Board of County Commissioners applied it in an unconstitutional manner. It is plaintiffs' contention that the standards of the ordinance were largely ignored, and that the conditional use permits were denied in an arbitrary, capricious, and discriminatory fashion.

■ County zoning authorities are bound by the terms and standards of the applicable zoning ordinance, and are not at

**6.** *McCloud v. Woodmansee*, 165 Ohio 271, 135 N.E.2d 316 (1956).

**7.** *Zito v. Zoning Board of Review*, 100 R.I. 561, 217 A.2d 667 (1966).

**8.** *Price v. Smith*, 416 Pa. 560, 207 A.2d 887 (1965).

**9.** *Baker v. Matheson*, Utah, 607 P.2d 233 (1979); *Continental Bank & Trust Co. v. Farmington City*, Utah, 599 P.2d 1242 (1979).

liberty either to grant[10] or deny[11] conditional use permits in derogation of legislative standards. Within the boundaries established by such standards, however, the zoning authority is afforded a broad latitude of discretion, and its decisions are afforded a strong presumption of validity.[12] Where such decisions have been made, courts will not interfere unless they are plainly illegal, arbitrary, unreasonable, or abusive of discretion.[13]

■ Plaintiffs presented no evidence, nor does the record suggest any, which leads inescapably to the conclusion that the decision of the Cache County Planning Commission was illegal, discriminatory, or an abuse of discretion. Denial of the permits in question rested on application of the numerical evaluation system set forth by the Planning Commission, together with numerous other factors pertinent to the desirability and ultimate benefit of the proposed uses, all of which constitute a legitimate exercise of governmental authority in the enactment of the ordinance in question.

■ Plaintiffs specifically point out that the Planning Commission and Board of County Commissioners of Cache County placed undue reliance on objections filed by landowners in the vicinity. While it is true that the consent of neighboring landowners may not be made a criterion for the issuance or denial or a conditional use permit,[14] there is no impropriety in the solicitation of, or reliance upon, information which may be furnished by other landowners in the vicinity of the subject property at a public hearing.[15] There is ample evidence to suggest that the input of neighboring landowners in the instant case was of this advisory nature.

Plaintiffs next suggest that the Cache County Zoning Ordinance is invalid, in that it does not comply with the requirements of the Enabling Act.[16] Specifically, plaintiffs urge that the ordinance erroneously places the issuance or denial of conditional use permits in the hands of the County Planning Commission, as opposed to the County Board of Adjustments.

Pursuant to Utah law, the Board of County Commissioners is given plenary power to implement, by resolution, a zoning plan drafted for the unincorporated area under its jurisdiction, such implementation to be accomplished by regulating the number, size, configuration, and other attributes of all improvements made on real property lying within each zone.[17] The act specifically provides for the issuance, by the Board of Commissioners itself, "of building permits as a condition precedent to the right to erect, construct, reconstruct or alter any building or structure within any zone covered by such zoning resolution."[18] The Board of County Commissioners is expressly empowered to enforce the terms of its zoning resolution by the withholding of such building permits.[19] It is also empowered to delegate the issuance or denial of such permits to a county building inspector or "may authorize an administrative official of the county to assume the functions of such position in addition to his customary functions."[20] The act authorizes, but does not require, the County Commission to invest the Board of Adjustments, by resolution, with the power to issue special exceptions

10. *Walton v. Tracy Loan & Trust Co.*, 97 Utah 249, 92 P.2d 724 (1939).

11. 3 Anderson, American Law of Zoning, Sec. 15.19.

12. *Naylor v. Salt Lake City Corp.*, 16 Utah 2d 192, 398 P.2d 27 (1965).

13. 101A C.J.S., Zoning and Land Planning, Sec. 275.

14. *Parker v. Zoning Board of Review*, 90 R.I. 166, 156 A.2d 210 (1959).

15. 3 Anderson, American Law of Zoning, Sec. 15.27.

16. U.C.A., 1953, 17–27–1, et seq.

17. U.C.A., 1953, 17–27–11.

18. Id.

19. U.C.A., 1953, 17–27–12.

20. Id.

to general zoning ordinances.[21] Where, and only where, such an investing resolution has been adopted, the Board of Adjustments is given statutory authority to hear and decide requests for such special exceptions.[22] The Board of Adjustments is also empowered to hear an appeal from any individual seeking to set aside the decision of any administrative official or body relating to the zoning resolution.[23]

Plaintiffs infer, from the foregoing statutory framework, that the Board of Adjustments is the *only* proper authority for the issuance of conditional use permits and *must* be invested with the power so to act; also that the Board of Adjustments is the *only* proper appellate body within the administrative system. Since the Cache County ordinance empowers the Planning Commission to issue or deny conditional use permits (which plaintiffs interpret as the "special exceptions" mentioned in the statute), and create a right of appeal directly to the Board of County Commissioners, plaintiffs assert that it is invalid. Such a construction not only ignores the plain import of the statutory language, together with the necessary implications to be drawn therefrom, but places the County Commission in an untenable position with regard to its ability to enforce its own zoning resolution.

That the County Commission need not invest the Board of Adjustments with the power to issue special exceptions is clear from the statutory language.[24] That the Commissioners are authorized to wield this power of their own accord is evident from the statutory grant of authority to issue or withhold building permits pursuant to enforcement of the zoning resolution—no legislative restrictions are placed on the type of permits, general or special, conditional or unconditional.[25] It is also plain that the County Commission is at liberty to

delegate the issuance of permits (again, without regard to type or label) to a county building inspector or other administrative official. Neither is there any requirement that, in making such a delegation of authority, the County Commission must surrender all control or power of review; the Board of Adjustments is constituted by statute a forum for review of all administrative zoning decisions, but nowhere is it made the exclusive repository of appellate powers.[26] Should the County Commission elect not to bestow upon the Board of Adjustments the power to issue special exceptions, but to place such power in the Planning Commission instead, and to reserve to itself final say in the dispensation of such exceptions, we cannot say that it has sought to clothe itself with authority not granted by the Legislature.

Plaintiffs' interpretation of the Enabling Act, moreover, imposes a curious administrative paradox on county zoning systems within the state. By law, the county commission is the body which initially forges the zoning resolution, upon recommendation from the planning commission.[27] It is the task of the county commission to decide which uses will be permitted in which zoning districts, and upon what, if any, conditions. Plaintiffs' interpretation would require the county commission to pass all administrative control over the implementation of so much of a plan as relates to special exceptions, conditional uses, and the like, to a subordinate body, which ceases to be answerable to the commission itself. Notwithstanding the fact that the county commission would retain whatever control it desired over the issuance of regular building permits, it would be deprived of any supervisory power over the issuance of any "special exceptions." Assuming, *arguendo*,

21. U.C.A., 1953, 17–27–15.

22. U.C.A., 1953, 17–27–16(2).

23. U.C.A., 1953, 17–27–16(1).

24. See footnote 21, supra.

25. See footnote 19, supra.

26. Regarding the policy implications of such an investiture of exclusive authority, see infra.

27. U.C.A., 1953, 17–27–10 and 11.

that such "special exceptions" are conditional use permits,[28] we cannot agree that such an arbitrary separation of power was within the contemplation of the Legislature.

■ Plaintiffs suggest that the Cache County Board of Commissioners violated their own procedural rules by failing to furnish written notice of the decisions reached in plaintiffs' respective cases.[29] Plaintiff Thurston received no written record of the decision made by the Board of County Commissioners, while plaintiff Nielsen received a written notice of the decision reached, with no reasons therefor attached.

Attacked strictly as a failure to give legislatively-required notice of Commission action,[30] the Board of Commissioners' omission was at best harmless error. It is conceded by all parties that both plaintiffs were present at the hearings which dealt with the matters here under consideration. As such, they were afforded an adequate opportunity to hear and dispute the reasons underlying the county action. Commonly, the presence of an objecting party at the hearing cures most deficiencies in notice requirements relating thereto.[31]

We deem plaintiffs' other arguments to be similarly without merit. The decision of the trial court is therefore affirmed. Costs to defendants.

MAUGHAN, C. J. and CROCKETT and WILKINS, JJ.,* concur.

STEWART, J., dissents.

28. The Cache County Zoning Ordinance invests the Board of Adjustments with power to issue "special exceptions," which it interprets as being permits for the construction of temporary buildings for commerce, industry, or residential use, which permits expire after a period of one year.

29. The Ordinance provides that "the Board of Commissioners may affirm, modify or reverse the decision of the Planning Commission, however, the Board of Commissioners shall present, in writing the reasons for it action."

30. Neither below nor pursuant to this appeal do plaintiffs suggest that such failure to issue a statement of reasons for the decision reached rendered the action of the County Commissioners void in that no basis for judicial review was furnished. Such an argument is, at all events, forestalled by the presence in Utah law of a right of plenary judicial challenge to any action of a municipal corporation in the form of a prayer for declaratory relief. See U.C.A., 1953, 78–33–2.

31. 3 Anderson, American Law of Zoning, Sec. 16.23.

* Crockett and Wilkins, Justices, concurred in this case before their retirements.