Craig M. CHAMBERS and Linda C. Chambers, Plaintiffs and Appellants,

v.

SMITHFIELD CITY and Robert Richardson, Defendants and Respondents.

No. 19252.

Supreme Court of Utah.

Feb. 14, 1986.

---

3. *Shioji v. Shioji, supra.*

Christopher L. Daines and David R. Daines, Logan, for plaintiffs and appellants.

Steven R. Fuller and B.H. Harris, W. Scott Barrett, Logan, for defendants and respondents.

HALL, Chief Justice:

Plaintiffs brought this action to invalidate the procedure by which defendant Smithfield City grants variances of its zoning ordinances, and to enjoin the issuance of a building permit to defendant Robert Richardson to build a single family residence upon property for which Richardson was granted a variance.

In 1982, defendant Richardson purchased a .67 acre lot in Smithfield, Utah. Prior to the sale, the lot was part of a one-acre parcel upon which a residence was already built. The lot sold to Richardson is located in a RE–1 zone. The purpose of the RE–1 zone is to serve as a buffer zone between residential and agricultural zones. To that end RE–1 allows residential use with a one-acre minimum building lot and also allows some animal use. At the time of the sale, Richardson was aware that the property was zoned RE–1 and that it required a one-acre minimum for building.

On March 11, 1982, Richardson proposed to the city that the city rezone his property from RE–1 to RE–1–12 so that a single family dwelling could be constructed on his .67 acre lot. Richardson withdrew his request for rezoning after a meeting with the city planning and zoning commission. On April 15, 1982, Richardson applied to the Smithfield City Board of Adjustment for a variance to allow him to build a residence on his property. The Board approved Richardson's request.[1] Richardson then applied to the city's zoning commission for approval of the variance. The zoning commission also approved the variance. Finally, Richardson applied to the city council for approval of the variance.

---

1. The Smithfield City Board of Adjustment has developed a standard form set of findings of fact. In this case, the findings of fact consist solely of this form with a "yes" or "no" to the side of each boilerplate finding. There are no other record findings of fact from the board of adjustment, the zoning commission, or the city council. Further, there is no evidence in the record in the form of transcripts, minutes, or other evidence of any kind which support these findings. Thus, the defendants in this case have relied on conclusory findings of fact which are not supported in any way by evidence specific to this case.

The council approved the variance.[2] At least one plaintiff was present at all three meetings when the variance application was approved, and registered opposition to the variance at all three meetings.

Following final approval of the variance, plaintiffs, owners of the land adjacent to Richardson's property, filed a complaint in the district court asking the court to declare invalid the procedures under which the variance was granted and to enjoin the issuance of the building permit to Richardson. The district court granted summary judgment to defendants relying exclusively on the boilerplate findings of fact from the Board of Adjustment to support his decision. No additional evidence was taken.

Plaintiffs' first point on appeal is that there is no reasonable basis in the evidence to justify granting a variance to Richardson. Plaintiffs thus contend that the decision to grant the requested variance was arbitrary and capricious.

U.C.A., 1953, § 10-9-12 requires that an applicant, in order to justify a variance, show at a minimum that the variance would not substantially affect the comprehensive zoning plan; that there are special conditions attached to the property which are not attached to other property in the same district; that unnecessary hardship would result if the variance was not granted; and that enjoyment of a substantial property right which is attached to the other property in the area would be denied.

As the Court said in *Xanthos v. Board of Adjustment:*[3]

> What must be shown by the applicant for the variance is that the property itself contains some special circumstance that relates to the hardship complained of and that granting a variance to take this into account would not substantially affect the zoning plan.[4]

■ Richardson has failed to meet this burden. There is simply no evidence in the record to support any one of the Board's findings. In fact, what evidence exists tends only to support a denial of the variance.

The RE-1 zone has as its purpose to serve as a buffer between residential and agricultural zones. To that end, RE-1 allows residential use with a one-acre minimum building lot, as well as some animal use. The main distinction between the RE-1 zone and other residential zones is the one-acre minimum building lot size. Thus, to grant a variance to build a home on a lot markedly smaller than the lot size required by the zoning classification would substantially affect the comprehensive zoning plan and clearly violates the spirit of the zoning ordinance.

Second, there is no evidence of special conditions attached to the property itself which do not also attach to other property in the vicinity. The property is neither unusual topographically or by shape, nor is there anything extraordinary about the piece of property itself.[5] Simply having land which a previous owner has subdivided and sold does not constitute special circumstances.

■ Finally, Richardson has not demonstrated that the denial of the variance would cause difficulties and unnecessary hardship. It is true that Richardson might suffer some economic loss by reason of not being allowed to build a house upon the lot he bought. However, as we said in *Xanthos*, hardship is not demonstrated by economic loss alone.[6] It must be tied to the special circumstances, none of which have been proven here.

Further, Richardson brought his loss upon himself. Richardson bought the small lot with full knowledge of the zoning requirements in the district. To grant a

---

**2.** Smithfield City Ordinance No. 4-2-d.6 requires this procedure. It is this portion of the ordinance that plaintiffs challenge.

**3.** Utah, 685 P.2d 1032 (1984).

**4.** *Id.* at 1036.

**5.** *See id.*

**6.** *Id.* at 1037.

variance allowing building on a smaller lot than is required by the zoning ordinance simply because the applicant has purchased a smaller lot, would make a mockery of the zoning plan. This Court will not condone such a result.

Plaintiffs' second point on appeal is that the procedure for granting a variance set forth in Smithfield City Ordinance No. 4–2–d.6 should be declared invalid since it conflicts with the enabling statute, U.C.A., 1953, § 10–9–12. The challenged portion of the ordinance reads as follows:

Whenever unusual circumstances exist, the Smithfield City Council may grant variances for building purposes on an individual lot basis or piece of property, even though said building and/or lot may not be in conformance with existing zoning laws. The Smithfield City Council will consider such exceptions only when recommended by both the Board of Adjustments and the Planning Commission.

■■ Thus, according to the ordinance a variance request must be submitted to both the Board of Adjustment and the planning commission for a recommendation. The recommendations are then submitted to the Smithfield City Council which makes the final determination whether or not to grant the variance.

This procedure does not comport with the provisions of the enabling act. U.C.A., 1953, §§ 10–9–1 to –18 (1973 ed. and Supp. 1985). That Act provides that the legislative body of a city (in this case the city council) has the right to regulate zoning. § 10–9–1. However, in order to exercise that power, the legislative body *shall* provide for the appointment of a Board of Adjustment. § 10–9–6. The Board is to be an appellate body for any person aggrieved by a zoning decision. § 10–9–9. Section 10–9–12 sets forth the powers of the Board. That section states the Board has the authority:

(1) To hear and decide appeals where it is alleged that there is error in any order, requirement, decision or determination made by the administrative official in the enforcement of this article or of any ordinance adopted pursuant thereto.

(2) To hear and decide special exceptions to the terms of the ordinance upon which such board is required to pass under such ordinance.

(3) To authorize upon appeal such variance from the terms of the ordinance as will not be contrary to the public interest, where owing to special conditions a literal enforcement of the provisions of the ordinance will result in unnecessary hardship; provided, that the spirit of the ordinance shall be observed and substantial justice done. Before any variance may be authorized, however, it shall be shown that:

(a) The variance will not substantially affect the comprehensive plan of zoning in the city and that adherence to the strict letter of the ordinance will cause difficulties and hardships, the imposition of which upon the petitioner is unnecessary in order to carry out the general purpose of the plan.

(b) Special circumstances attached to the property covered by the application which do not generally apply to the other property in the same district.

(c) That because of said special circumstances, property covered by application is deprived of privileges possessed by other properties in the same district; and that the granting of the variance is essential to the enjoyment of a substantial property right possessed by other property in the same district.

Thus, it is clear that the intent of the legislature was to vest the authority to grant variances of the zoning ordinances solely in the Board of Adjustment. This interpretation is further bolstered by section 10–9–15 which states:

The *city* or any person aggrieved by any decision of the board of adjustment may have and maintain a plenary action for relief therefrom in any court of competent jurisdiction; provided, petition for such relief is presented to the court within thirty days after the filing of such decision in the office of the board.

(Emphasis added.) This section thus anticipates that a city may not always agree with a decision by the Board of Adjustment. The city's remedy is not then to overrule the Board but, as with any aggrieved party, to appeal to the district court within thirty days.

From the above, it is clear that the Smithfield City Ordinance violates the enabling statute in several ways. The ordinance provides that the city council is the decision making authority. This is directly contrary to the provisions of the statute which vest final authority in the Board of Adjustment. Further, the ordinance makes the statutory provision requiring an aggrieved person to appeal from a decision of the Board of Adjustment within thirty days virtually impossible to meet since the ordinance requires that an applicant must also seek approval from the planning commission and the city council.

Defendants rely on *Thurston v. Cache County*[7] for the proposition that the city council can review the actions of the Board of Adjustment. This reliance is misplaced. In *Thurston*, the Court was considering the enabling act for *county* zoning. U.C.A., 1953, §§ 17–27–1 to –27 (1973 ed. and Supp.1985). The statutory provisions regarding county boards of adjustment are entirely different from those concerning city boards of adjustment. In fact, section 17–27–15 specifically provides that the decision to vest a board of adjustment with the authority to grant variances to zoning ordinances is discretionary with the county commission. Thus, *Thurston* is inapposite to this case.

Smithfield City Ordinance No. 4–2–d.6 which grants final authority to the city council to approve variance requests is thus invalid.

The judgment of the district court is reversed.

STEWART, DURHAM and ZIMMERMAN, JJ., concur.

HOWE, J., concurs in the result.

7. Utah, 626 P.2d 440 (1981).