John HARRIS and Suzanne Harris,
Plaintiffs and Respondents,

v.

SPRINGVILLE CITY, a municipal corpo-
ration, Brent Haymond and Afton
Johnson, Defendants and Appellants.

No. 19495.

Supreme Court of Utah.

Oct. 12, 1984.

Rehearing Granted Dec. 12, 1984.

On Rehearing Jan. 30, 1986.

S. Rex Lewis, Provo, for Johnson.

Harold M. Mitchell, Springville, for
Springville City.

Brian C. Harrison, Provo, for plaintiffs
and respondents.

HALL, Chief Justice:

Afton Johnson appeals the trial court's
judgment that the ice manufacturing busi-
ness she was conducting constituted a
change of use from a prior preexisting
nonconforming use under municipal zoning
ordinances. The court found that the
change of use constituted a violation of
Springville City ordinances and enjoined ap-
pellant from using the property for manu-
facturing and selling block and crushed ice.
We affirm.

Afton Johnson operates an ice manufac-
turing business in Springville, Utah, known
as Brookside Ice Company. The business
is located in a neighborhood zoned exclu-
sively for residential purposes. Johnson's
predecessor manufactured burial vaults
and septic tanks. This prior use was a
lawful preexisting nonconforming use.[1]
Prior to purchasing the property, Johnson
was aware of the nonconforming character

---

1. Authorized by § 11–3–201, Springville City
Municipal Ordinances. Section 11–3–206 pro-
vides that "[a] nonconforming use of a building

or lot shall not be changed to any other noncon-
forming use."

of the proposed business. She approached the city council to determine if the ice manufacturing business would be allowed. The council determined that the ice business was a continuation of the same kind of business as manufacturing burial vaults and septic tanks and issued a business license to Johnson in October 1979. Thereafter a building permit was issued allowing construction of a loading dock and storage space in excess of 400 square feet. Johnson also installed large refrigeration units. She used three large diesel trucks and a delivery truck for the sale and delivery of the manufactured ice. In addition to normal business hours, the business often operated at night, on Sundays, and on holidays.

In June 1980, plaintiffs asked the city council to enjoin the operation of the business. The city denied the request. Plaintiffs filed this action in October 1981, alleging that the business constituted a nuisance and was a change in use in violation of city ordinances. The trial judge found that the business did not constitute a nuisance. However, rejecting Johnson's contention that a burial vault and septic tank manufacturing operation was synonymous with an ice manufacturing facility, the judge concluded that the use of the property had been changed and that any change violated Springville City ordinances. The trial judge thereupon enjoined Johnson from using the property for the manufacture or sale of ice. On appeal, Johnson seeks to have the injunction dissolved.

In *Systems Concepts, Inc. v. Dixon*, Utah, 669 P.2d 421, 425 (1983), this Court set forth the standard to be followed when reviewing injunctions:

> The granting or refusing of injunction rests to some extent within the sound discretion of the trial court, and its judgment ... will not be disturbed on appeal unless it can be said the court abused its discretion, or that the judgment rendered is clearly against the weight of the evidence.

(Citations omitted.)

In support of her contention that the injunction should be overturned, Johnson urges that (1) a balance of equities requires that she be able to continue the business, and (2) the determination of the city council that the uses were of the same type should be upheld where there was no formal finding that the council's action was arbitrary and capricious. In effect, appellant is suggesting that actions violating the plain language of a zoning ordinance should be condoned. This result is unacceptable.

This Court, in *Thurston v. Cache County*, Utah, 626 P.2d 440, 444–45 (1981), said: "County zoning authorities are bound by the terms and standards of the applicable zoning ordinance, and are not at liberty either to grant or deny conditional use permits in derogation of legislative standards." (Citations omitted.)

The material evidence adduced in this case indicated that the city authorities disregarded the zoning ordinances and acted in derogation thereof. In light of that evidence, the trial judge did not abuse his discretion in granting the injunction.

Johnson's last point on appeal is that the plaintiffs did not allege or prove damages. Appellant did not raise this point during trial or in her motion for a new trial. This Court will not consider an issue raised for the first time on appeal. *Barson v. E.R. Squibb & Sons*, Utah, 682 P.2d 832 (1984). In any event, the judgment in this case was bottomed on a violation of a zoning ordinance, not on any pleading or proof of damages. The nonconformance with zoning ordinances of the contested use is dispositive of this case irrespective of any question of whether anyone pleaded damage, was damaged or proved damages.

The judgment is affirmed. Costs on appeal to respondents.

DURHAM and ZIMMERMAN, JJ., concur.

HOWE, Justice (dissenting):

I dissent. I would remand this case to the district court to make a finding of fact

as to whether the operation of the ice plant specially damaged the plaintiffs. Without a finding that the plaintiffs suffered special damages, the injunction entered by the court cannot be sustained. The law is that for a private person to maintain an action to enjoin violation of a zoning regulation (as distinguished from an action brought by the municipality) a person must allege and prove that the violation complained of results in special damages which are peculiar to him. The kind and amount of damage which will meet this requirement is damage over and above the public injury which may be caused by the violation of the zoning regulations. *Padjen v. Shipley*, Utah, 553 P.2d 938 (1976); 4 Anderson, *American Law of Zoning*, 2d ed., § 27.11, at 332.

The plaintiffs produced evidence that noise emanated from the refrigeration plant and from large trucks coming to and from the plant during both day and night hours. However, the defendant presented evidence that the noise was not perceptible to most people in the neighborhood, that the level of noise was not offensive even to those who could hear it, and that the plaintiffs were unreasonable in their sensitivity to any noise. The trial court made no finding at all as to whether the plaintiffs sustained any damage by the claimed noise and cast considerable doubt upon the claims of the plaintiff when it found that:

> The nature and change of use of the subject property did not constitute an increase in the scope of the preexisting nonconforming use.

Moreover, the trial court also concluded that the ice manufacturing plant did not constitute a nuisance.

Proof of special damages was part of the plaintiffs' cause of action. It is of no consequence whether the defendant objected to that lack of proof in the trial court. *Delatore v. Delatore*, Utah, 680 P.2d 27 (1984). The burden was on the plaintiffs to produce that evidence. Also, it is immaterial that the point was not raised on motion for new trial. Not since adoption of the Utah Rules of Civil Procedure in 1950 has a motion for a new trial been a prerequisite to taking an appeal. However, the defendant did move for a new trial on the ground of "insufficiency of the evidence to justify the judgment...." That ground covered lack of proof of special damages.

The injunction cannot be sustained without further findings as to the particular damage, if any, sustained by these plaintiffs. I would remand the case for that purpose.

STEWART, J., concurs in the dissenting opinion of HOWE, J.

### ON REHEARING

HALL, Chief Justice:

Plaintiffs, neighbors to defendant Afton Johnson's ice manufacturing business, filed suit in district court to enjoin operation of the business. Plaintiffs claimed that the business constituted a change in use from the prior preexisting nonconforming use, in violation of Springville City zoning ordinances. The district court found that the change of use did constitute a violation of the ordinances and enjoined operation of the business. On appeal, this Court affirmed.[1] Defendants filed a petition for rehearing, challenging plaintiffs' standing to bring the suit in the first instance. This Court granted the rehearing to consider plaintiffs' standing to bring this suit.

Defendants did not challenge plaintiffs' standing to bring this action in the court below. However, lack of standing is jurisdictional.[2] Therefore, defendants can raise the issue of standing on appeal.

This Court in *Jenkins v. Swan*[3] formulated some general tests for determining whether a plaintiff had standing to sue.

---

1. *Harris v. Springville City*, No. 19495 (filed October 12, 1984).

2. *Heath Tecna Corp. v. Sound Systems Internat'l, Inc.*, Utah, 588 P.2d 169, 170 (1978).

3. Utah, 675 P.2d 1145 (1983).

These tests were summarized in *Kennecott Corp. v. Salt Lake County*[4] as follows:

1. We first apply traditional standing criteria, which require that (a) the interests of the parties be adverse, and (b) the parties seeking relief have a legally protectible interest in the controversy. "Plaintiff must be able to show that he has suffered some distinct and palpable injury that gives him a personal stake in the outcome of the legal dispute."

2. If the plaintiff has no standing under the first step, then he may have standing if no one has a greater interest than he and if the issue is unlikely to be raised at all if the plaintiff is denied standing.

3. In unique cases, standing may be established by a showing that the issues raised by the plaintiff are of great public importance and ought to be judicially resolved.[5]

Under the first test, plaintiffs must show that they have a specific personal and legal interest in the subject matter of the decision as distinguished from a general interest such as all members of the community have.[6] Plaintiffs must also show that they suffered some injury peculiar to their own property or at least more substantial than that suffered by the community at large.[7] This does not mean that a particular plaintiff must show damages different from his immediate neighbors. He must only show that the damages were more substantial than those suffered by the general public. For example, if an increase in traffic resulted from a particular variance that generally affected all owners similarly situated, plaintiff would have standing only if he could show that his property or his property and that of his immediate neighbors suffered injuries more substantial than that suffered by the general public.[8]

In this case, plaintiffs are not just any members of the general public. They are neighbors of the ice business. Plaintiffs alleged that they were damaged by the defendants' acts and that the activity of the commercial business caused excessive and unreasonable noise and disruption to plaintiffs and other landowners adjoining the business. The trial judge, in his findings of fact and conclusions of law, made no findings concerning special damages to plaintiffs, although there was evidence presented at trial which reflects that special damages were suffered. Simply because the trial judge made no finding of special damages, it does not follow that there were none.

It is evident from the record that plaintiffs sustained special damages. Plaintiffs are close neighbors who are directly affected by the new nonconforming use to which the property has been put. As neighbors, plaintiffs clearly have a personal stake in the controversy which cloaks them with standing to sue.[9]

The judgment of the trial court is therefore affirmed.

STEWART, DURHAM and ZIMMERMAN, JJ., concur.

HOWE, Justice (dissenting):

I dissent from the action of the majority deciding a controversial factual issue which was not determined in the trial court. We have in previous cases almost unanimously refused to do so, stating that the trial court with the witnesses before it is in a much better position to determine factual issues than we are from the cold record. The evidence is far from "evident from the record" (as claimed by the majority) that plaintiffs sustained special damages. As I pointed out in my dissenting opinion when this case was originally before us:

---

**4.** Utah, 702 P.2d 451 (1985).

**5.** *Kennecott*, 702 P.2d at 454 (citations omitted).

**6.** *See Padjen v. Shipley*, Utah, 553 P.2d 938, 939 (1976).

**7.** *Id.*

**8.** *See, e.g., Victoria Corp. v. Atlanta Merchandise Mart, Inc.*, 101 Ga.App. 163, 112 S.E.2d 793, 795 (1960).

**9.** *See Jenkins*, 675 P.2d at 1150 (one who has personal stake in the controversy has standing).

The plaintiffs produced evidence that noise emanated from the refrigeration plant and from large trucks coming to and from the plant during both day and night hours. However, the defendant presented evidence that the noise was not perceptible to most people in the neighborhood, that the level of noise was not offensive even to those who could hear it, and that the plaintiffs were unreasonable in their sensitivity to any noise.

While the trial court made no finding as to whether the plaintiffs sustained any special damages as required by *Padjen v. Shipley*, Utah, 553 P.2d 938 (1976), the court did find that the ice manufacturing plant did not constitute a nuisance and that there was no "increase in the scope of the preexisting nonconforming use." These findings certainly are not favorable to plaintiffs' claim of special damages.

Since the evidence was conflicting as to the noise, and the special damages to the plaintiffs, if any, fell far short of being "evident from the record," the injunction cannot be sustained. I would remand this case for findings as to the particular damage, if any, sustained by the plaintiffs.