The KEARNS–TRIBUNE CORPO-
RATION (publisher of The Salt
Lake Tribune), Petitioner,

v.

The Honorable Homer F. WILKINSON, a
Judge in the Third Judicial District
Court, State of Utah, Salt Lake County,
Respondent.

No. 970351

Supreme Court of Utah.

Sept. 23, 1997.

Michael Patrick O'Brien, Sharon E. Sonnenreich, Salt Lake City, for petitioner.

Brent M. Johnson, Salt Lake City, for respondent.

Jeffrey J. Hunt, Salt Lake City, for amicus Deseret News Publishing Co.

E. Neal Gunnarson, Ernest W. Jones, Salt Lake City, for Salt Lake County District Attorney.

### Order on a Petition for an Extraordinary Writ

ZIMMERMAN, Chief Justice:

This matter came before the court on a petition for an extraordinary writ. Petitioner Kearns–Tribune Corporation ("Kearns–Tribune") seeks a writ compelling the Honorable Homer F. Wilkinson, respondent, to (i) vacate his decision rendered on June 10, 1997, and entered on July 14, 1997, finding that Kearns–Tribune lacked standing to claim access to documents filed by the district attorney requesting a secrecy order under the Investigative Subpoena Powers Act, sections 77–22–1 to –5 of the Utah Code, and (ii) grant Kearns–Tribune access to the documents requesting secrecy of the underlying investigation. The matter was heard before the court, sitting en banc, with Justice Stewart recused. Having considered the arguments and papers, and for the reasons discussed below, we grant the petition.

We briefly recite the facts before turning to the standard of review and our analysis. In April of 1997, Kearns–Tribune wrote to the district court seeking access to documents it believed the district attorney had filed with the court. In that letter, Kearns–Tribune asked the district court for access to the district attorney's statement of good cause for commencing the investigation, his application to keep the file secret, and the signed closure order.[1] In response, the court held a colloquy with the district attorney and Kearns–Tribune. During that colloquy, the district attorney objected to Kearns–Tribune's request, arguing that Kearns–Tribune lacked standing to seek the records in question. The district court required Kearns–Tribune to intervene in the matter and present the court with a written motion, which it did. The district court heard oral argument on the matter in June and ruled from the bench that Kearns–Tribune lacked standing to seek access to the secrecy application and, alternatively, that Kearns–Tribune had failed to show good cause why the application for secrecy in the underlying investigation should be opened.

As to the standard of review, the question of whether a given individual or association has standing to request a particular relief is primarily a question of law, although there may be factual findings that bear on the issue. We will review such

---

1. Kearns–Tribune subsequently dropped its request for access to the good cause statement and in this action seeks access to the investigative secrecy application and order only.

factual determinations made by a trial court with deference. *State v. Pena*, 869 P.2d 932, 935–36 (Utah 1994). Because of the important policy considerations involved in granting or denying standing, we will closely review trial court determinations of whether a given set of facts fits the legal requirements for standing, granting minimal discretion to the trial court. *Id.* at 938, 939.

Beginning our analysis, Kearns–Tribune contends that the language of section 77–22–2 of the Utah Code, as well as other provisions of state law and of the state constitution, give it the right to challenge an order by the district court granting the district attorney's request to keep secret the records relating to his investigation under the Investigative Subpoena Powers Act. *See* Utah Code Ann. § 77–22–2(7)(a). Pursuant to that contention, in this action Kearns–Tribune seeks access to the district attorney's application for secrecy of the underlying investigation and the district court's order granting such secrecy, to determine whether, in its opinion, that application shows good cause why the investigation should be kept secret. Kearns–Tribune claims the right to inspect this document so that it may determine whether it has reason to challenge the district court's order granting the district attorney's secrecy request.

A brief statutory review is in order before proceeding with our analysis. The Investigative Subpoena Powers Act grants the attorney general, the county attorney, and the district attorney the power to conduct criminal investigations using court-issued subpoenas. Utah Code Ann. § 77–22–2. The attorney seeking to initiate an investigation using such subpoenas, in this case the district attorney, is subject to several requirements. He must first show good cause why the district court should allow the investigation to commence. *Id.* § 77–22–2(1)(a). Next, for each subpoena requested, the district attorney must show that "the requested information is reasonably related to the criminal investigation authorized by the court." *Id.* § 77–22–2(2)(b). Next, if he chooses, the district attorney may submit an application

for investigative secrecy. The district court may order investigative secrecy upon a showing that there is "a reasonable likelihood that publicly releasing information about the identity of a witness or the substance of the evidence resulting from a subpoena or interrogation would pose a threat of harm to a person or otherwise impede the investigation." *Id.* § 77–22–2(7)(a). Finally, the district attorney may request that the "application and good cause showing for the order authorizing the investigation" also be kept secret if those documents contain "the identities of witnesses and targets of the investigation" and if the same reasonable likelihood of harm or of impeding the investigation exists. *Id.* § 77–22–2(8).

Thus, the statute creates four types of documents: (i) the application and good cause statement filed by the district attorney requesting authority to commence the investigation ("application and good cause statement"); (ii) the subpoena records themselves ("records"), i.e., the subpoenas, the statements taken from witnesses, the evidence gathered, etc.; (iii) the district attorney's application for an order of secrecy to govern the investigation ("investigative secrecy application") and the accompanying secrecy order from the district court ("investigative secrecy order"); and (iv) the district attorney's application for secrecy covering the application and good cause statement for commencing the investigation ("initiating documents secrecy application") and the accompanying order from the district court ("initiating documents secrecy order").

■ As an initial matter, we note that both parties and the district court have interpreted section 77–22–2(8) as allowing the district court to order that the investigative secrecy application itself be kept secret.[2] Apparently, the district attorney and the district court have proceeded on this assumption in their Investigative Subpoena Powers Act matters. However, we find no support for that reading of the statute in its plain language. Section 77–22–2(8) reads, "If the state's *application and good cause showing for the order authorizing the investigation*

---

**2.** In it amicus curiae brief, the Deseret News does point out that nothing in the statute allows

the investigative secrecy order to be kept secret. We agree.

... contain the identities of witnesses ... [the] district attorney may submit an application [for secrecy]." (Emphasis added.) The parties have apparently taken the underlined word "application" and concluded that it refers to the investigative secrecy application authorized under section 77–22–2(7)(a).

We find, however, that the underlined phrase must be taken as a whole and refers to the application and good cause showing that is necessary to commence an investigation under section 77–22–2(1)(a) of the Investigative Subpoena Powers Act. ("[T]he ... district attorney ... may upon application ... and for good cause shown conduct a criminal investigation."). We find support for this reading in our opinion in *In re Criminal Investigation*, 754 P.2d 633, 656 (Utah 1988). In that case, we reviewed the constitutionality of the prior version of the Investigative Subpoena Powers Act. We concluded that the legislature's omission of the application and good cause showing for commencing the investigation from the list of documents that could be kept secret indicated the legislature's intent that those documents not be kept secret. *Id.* In subsequently amending the statute, the legislature saw fit to rectify this omission, thereby indicating its intent that the application and good cause showing for commencing an investigation could, in fact, be kept secret. That is precisely what section 77–22–2(8) allows. That section does not, however, allow the investigative secrecy application to be kept secret, as both parties and the district court seem to have concluded.

Moving to the issue of standing, Kearns–Tribune seeks access to the district attorney's investigative secrecy application and the accompanying investigative secrecy order so that it may determine whether, in its opinion, good cause existed for the district court to issue an investigative secrecy order and, by extension, whether reason exists for Kearns–Tribune to challenge the investigative secrecy order itself and seek access to the subpoena records. We wish to make clear that in this order we are not passing judgment on the question of whether the district court's investigative secrecy order was appropriate. We address only the issue of whether the district court's order denying Kearns–Tribune access to the investigative secrecy application and order was appropriate.

■ The district attorney contends, and the trial court found, that Kearns–Tribune lacked standing to challenge the trial court's order sealing the secrecy application. The trial court's order specifically determined that Kearns–Tribune "lacks standing to unseal the Application, Affidavit and Order." Our traditional standing rule requires (i) that one be adversely impacted by a governmental action, (ii) "that there exists a causal relationship between the governmental action and the injury to the plaintiff," and (iii) "that the relief requested will provide a remedy for the injury." *Society of Prof. Journalists v. Bullock*, 743 P.2d 1166, 1174 (Utah 1987).

■ Kearns–Tribune meets all three prongs of the test for standing. Prongs two and three are clear: the district court's secrecy order caused the claimed adverse impact, and the requested relief (access to the secrecy application) would provide a remedy. The question of whether Kearns–Tribune is adversely impacted or injured is more difficult. Kearns–Tribune contends that it is adversely impacted because it has a right to seek access to a court's public records. The district attorney argues that Kearns–Tribune is not adversely affected because it has no underlying right to seek the records of the criminal investigation. It argues that because Kearns–Tribune has no underlying right of access to the criminal investigation records, denying Kearns–Tribune access to the secrecy application cannot cause harm.

We agree with Kearns–Tribune. While it is true that ordinarily the public has no right to access the district attorney's records regarding a criminal investigation, *see In re Grand Jury Proceedings*, 942 F.2d 1195, 1198 (7th Cir.1991); *Times Mirror Co. v. United States*, 873 F.2d 1210, 1213 (9th Cir. 1989); *In re Subpoena to Testify Before Grand Jury*, 864 F.2d 1559, 1563 (11th Cir. 1989); *In re Final Grand Jury Report*, 197 Conn. 698, 501 A.2d 377, 382 (1985), the Investigative Subpoena Powers Act presumes that the court records generated pursuant to it are open to the public. The

statute provides that the district attorney "may make written application to any district court showing a reasonable likelihood that publicly releasing information about the identity of a witness or the substance of the evidence resulting from a subpoena or interrogation would pose a threat of harm to a person or otherwise impede the investigation." Utah Code Ann. § 77–22–2(7)(a). This section allows the records to be kept secret, which implies that the records are to be open unless the district attorney makes the requisite showing.

■ The district attorney's argument, that Kearns–Tribune has no right to see the records in this case and thus has no standing to challenge the district court's order, incorrectly focuses on the issue of whether Kearns–Tribune will ultimately be successful should it choose to challenge the district court's order keeping the subpoena records secret. Kearns–Tribune is correct when it contends that it does not have to prove that it has a right to access the particular documents in this case in order to show that it has standing. The presumed openness of the Investigative Subpoena Powers Act records affords the general public, of which the press is a member, standing to challenge secrecy orders entered by the district court. Thus Kearns–Tribune does have standing to challenge the district court's order keeping the district attorney's investigative secrecy application from public view.

■ We turn now to Kearns–Tribune's second requested relief, namely, that we order the district court to grant it access to the district attorney's investigative secrecy application. The district court, after finding that Kearns–Tribune lacked standing, ruled in the alternative that Kearns–Tribune had failed to show good cause why the investigative secrecy application should be opened. As noted above, however, the parties and the district court seem to have misread the statute as allowing the district court to enter an order keeping the investigative secrecy application itself secret. We find that nothing in the statute allows the district court to enter such an order. Therefore, the investigative secrecy application is a public document to which Kearns–Tribune must be granted access.[3]

■ We note that the district court ruled in the alternative that Kearns–Tribune had not shown good cause why the order granting secrecy to the district attorney's investigative secrecy application should be "unsealed." Even assuming that the statute allowed the district court to enter such an order, as it does in regard to keeping the investigation secret, the district court misconstrued the parties' burdens under the statute. The Investigative Subpoena Powers Act does not require the party challenging the investigative secrecy order to show good cause why the records should be open. Rather, the act presumes that such records will be open unless and until the district attorney has made a showing that there is "a reasonable likelihood that publicly releasing information about the identity of a witness or the substance of the evidence . . . would pose

---

**3.** We note that it is possible that an incautiously drafted investigative secrecy application could itself contain information that would frustrate the purposes of the Investigative Subpoena Powers Act. However, trial courts have the inherent power to conduct in camera proceedings to intelligently rule on matters before them. *See Taglianetti v. United States,* 394 U.S. 316, 317, 89 S.Ct. 1099, 1100, 22 L.Ed.2d 302 (1969); *Dennis v. United States,* 384 U.S. 855, 874, 86 S.Ct. 1840, 1851, 16 L.Ed.2d 973 (1966); *see also Phoenix Newspapers, Inc. v. Superior Court,* 140 Ariz. 30, 680 P.2d 166, 169–70 (App.1983) (citing *State ex rel. Mahoney v. Superior Court,* 78 Ariz. 74, 275 P.2d 887, 889 (1954)). This power is derived from the court's inherent power to judicially conduct its affairs. Various states have considered this power and determined that the courts have the power to conduct in camera

proceedings " 'where the circumstance warrants,' " *Grimes v. State,* 321 So.2d 584, 592 (Fla.App.1975) (quoting *United States v. Hurse,* 453 F.2d 128, 131 (8th Cir.1971)), or " 'where the rights of parties[ ] or witnesses[ ] could not otherwise be protected,' " *State ex rel. Bilder v. Township of Delavan,* 112 Wis.2d 539, 334 N.W.2d 252, 261 (Wis.1983) (quoting *State ex rel. Ampco Metal, Inc. v. O'Neill,* 273 Wis. 530, 78 N.W.2d 921, 926 (1956)). Further, when reviewing such proceedings in the trial courts, this court has the inherent power to proceed in camera when it is necessary to allow the court to intelligently rule on a matter before us.

In the present case, none of the proceedings were conducted in camera, either in the trial court or in this court. Further, nothing in the record indicates that any request was made to so proceed.

a threat of harm to a person or otherwise impede the investigation." *Id.* The statute specifically provides that once the requisite showing is made, the court may order that certain specific investigative records be kept secret. *Id.* We reiterate that the burden is on the district attorney to show good cause why the investigation should be kept secret.

 It should be noted that the district attorney may have important, legitimate reasons for keeping investigative subpoenas secret. There can be concerns about witness intimidation and about allowing investigative targets to tailor testimony if they are allowed access to the information gathered during the district attorney's criminal investigation. Although the district attorney may have already made this showing to the district court in obtaining the investigative secrecy order, should Kearns–Tribune choose to challenge the adequacy of this showing, the district attorney will be required to again make the showing in open court. The district attorney's initial showing to the court will by definition always be ex parte. Thus, once the investigative secrecy order is challenged, the district attorney must again make the required showing to ensure some outside review of the statutory process. If the district attorney were allowed to rest on the initial ex parte showing made to the court, no effective challenge to a district court's investigative secrecy order could ever be made.

We emphasize that nothing in this opinion should be read as passing judgment on the issue of whether the order approving the investigation itself was appropriate or whether the underlying investigative secrecy order was supported by the required good cause showing. We have here addressed only the issue of whether the statute allows the district court to enter an order of secrecy covering the district attorney's investigative secrecy application. We conclude that it does not.

The district court's order is vacated. Kearns–Tribune does have standing to challenge the district court's order granting the district attorney's request to keep the investigative secrecy application secret. Further, the statute does not authorize the district court to enter such an order. The district attorney's investigative secrecy application is a public document to which Kearns–Tribune, as a member of the public, should be granted access. The petition for an extraordinary writ is granted, and the district court is ordered to grant Kearns–Tribune access to the investigative secrecy application filed by the district attorney under section 77–22–2(7)(a) of the Investigative Subpoena Powers Act and the investigative secrecy order signed by the district court.

HOWE, DURHAM and RUSSON, JJ., concur.

Having disqualified himself, STEWART, Associate C.J., does not participate herein.